# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE OF THE | ) | |
| DEPARTMENT OF THE TREASURY OF | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-836 |
| | ) | Judge Nora Barry Fischer |
| KIRK G. JOHNSON, | ) | (Appeal Related to Bankruptcy Nos. 05- |
| | ) | 35220-TPA; 07- 02077-TPA) |
| | ) | |
| Appellee. | ) | |
| | ) | |

## I.  INTRODUCTION

Pending before the Court is an appeal of an April 18, 2008 Memorandum Opinion and Order of the Bankruptcy Court in Adversary Proceeding No. 07-2077. (Docket No. 1). Appellant Internal Revenue Service ("IRS") appeals the Bankruptcy Court's Order permitting the debtor, Kirk G. Johnson ("Debtor" or "Johnson") to "strip off" the IRS' federal tax lien from his real property. Based on the following, the decision of the Bankruptcy Court is **AFFIRMED**, as the record demonstrates that the Bankruptcy Court did not err in stripping the federal tax lien in accordance with Johnson's Chapter 11 Amended Plan of Reorganization and as authorized by §§ 506(a) and 1123(b)(5) of the Bankruptcy Code.

## II.  BACKGROUND

Johnson filed a voluntary Chapter 11 petition on October 10, 2005. As recognized by the

1

Bankruptcy Court, Johnson "operates a business proprietorship known as 'KJ Transit.'" *In re Johnson*, 386 B.R. 171, 172 (Bkrtcy.W.D.Pa. 2008). In addition,

> [Johnson] owns and resides at real property located at 4008 Turnwood Lane, Coraopolis, Pa. ("the Real Property"). The Real Property possessed a fair market value of $279,000 as of the date the bankruptcy petition was filed. As of that same date, the Real Property was subject to a purchase money first mortgage lien in the amount of $279,440 held by Mortgage Electronic Registration Systems, Inc. ("the MERS Mortgage") and a county real estate tax lien in the amount of $215.61 ("the County Lien"). The MERS Mortgage and the County Lien therefore collectively exceed the fair market value of the Real Property and both of them predate any lien held by the IRS.
>
> The Debtor also owns various items of personal property with a total fair market value of $53,595.83 ("the Personal Property"). Other than the lien of the IRS, the only item of the Personal Property subject to a lien is a 2002 Lincoln Navigator. As of the Petition date, the fair market value of that vehicle was $18,675. At that time the vehicle was subject to a security interest in favor of M. & T. Credit Services, LLC in the amount of $12,221 ("the M & T Lien") superior to the lien of the IRS. ... Debtor's total equity in all of the Personal Property was $41,374.88.

*Johnson*, 386 B.R. at 172-73.

The IRS was listed as a secured creditor on Schedule D of Johnson's Chapter 11 petition for its federal tax lien. The IRS filed an Amended Proof of Claim on February 17, 2006, asserting that its federal tax lien entitled it to a secured claim in the amount of $178,673.05 and an unsecured priority claim of $2,374.71, for a total claim of $181,047.76 against all of Johnson's personal and real property. (Docket No. 1-2 at ¶ 6). Johnson filed his Chapter 11 Plan of Reorganization, Summary of Chapter 11 Plan, and Disclosure Statement with the Bankruptcy Court on February 5, 2007. (Bankr.No. 05-35220-TPA, Docket Nos. 86-88).[1] Thereafter, on February 20, 2007, Johnson

---

[1] The Court takes judicial notice of the following documents which are filed of record before

initiated an adversary proceeding against the IRS to determine the nature and validity of the tax lien by filing an adversary complaint. (Docket No. 1-2).

Johnson's adversary complaint against the IRS sought, among other things, to strip the IRS' lien from the real property (as ordered in *In re Johnson*, 386 B.R. at 172). (Docket No. 1-2). On April 17, 2007, the IRS stipulated that it was entitled to an allowed secured claim of $41,374.88, an allowed unsecured priority claim of $30,595.00, and a general unsecured claim of $109,079.88. (Bankr.No. 05-35220-TPA, Docket No. 112). This stipulation was approved by the Bankruptcy Court on April 23, 2007. (*Id*. at 112). However, the stipulation did not resolve whether the lien of the IRS would be stripped from the real property.

Johnson filed his Chapter 11 Amended Plan of Reorganization ("Amended Plan") on May 1, 2007, which was confirmed by the Bankruptcy Court on May 3, 2007. (Bankr.No. 05-35220-TPA, Docket Nos. 125-26). Many of the provisions of the Amended Plan are pertinent to this matter. The Internal Revenue Service is defined as "Internal Revenue Service of the Department of the Treasury of the United States of America" at section 1.15. (Bankr.No. 05-35220-TPA, Docket No. 125 at § 1.15). The IRS' federal tax lien is treated in three separate classes under section II "Classification of Claims and Interests" in the Amended Plan. Section 2.02, Class 2, provides that "[t]he allowed secured claim of the Internal Revenue Service which is secured by a lien on [Johnson's] assets, to

---

the Bankruptcy Court and necessary to the resolution of this appeal: (1) Chapter 11 Plan of Reorganization (Bankr.No. 05-35220-TPA, Docket No. 86); (2) Summary of Chapter 11 Plan (Bankr.No. 05-35220-TPA, Docket No. 87); (3) Disclosure Statement (Bankr.No. 05-35220-TPA, Docket No. 88); (4) Stipulation and Agreement (Bankr.No. 05-35220-TPA, Docket No. 112); (5) Order of Court approving Stipulation and Agreement (Bankr.No. 05-35220-TPA, Docket No. 114); (6) Chapter 11 Amended Plan of Reorganization and Appendices (Bankr.No. 05-35220-TPA, Docket No. 125); and (7) Order of Court confirming Amended Plan of Reorganization (Bankr.No. 05-35220-TPA, Docket No. 126).

the extent that such claim is an allowed, non-voidable, and unavoidable secured claim under the [Bankruptcy] Code." (*Id*. at § 2.02). All allowed unsecured priority claims of the IRS are designated as Class 7 claims and all allowed unsecured claims which are not priority claims are designated as Class 11 claims under sections 2.07 and 2.11 of the Amended Plan, respectively. (*Id*. at §§ 2.07, 2.11). Moreover, section 4.02 delineates the treatment of the IRS' impaired secured claims under the Amended Plan, i.e., the treatment of the allowed secured claims in Class 2. Specifically, section 4.02 provides the following:

> 4.02 CLASS 2 - Unless the holder of Class 2 claim and the Debtor agree to other treatment, the Internal Revenue Service shall retain the lien which secures its allowed Class 2 Claim and shall be paid 100 percent of its allowed claim with interest at an annual rate of 8 percent in seventy-two equal monthly installments commencing on the Plan Effective Date. The Debtor and the IRS have entered into a stipulation which has been approved by the Court regarding payment of this claim. A copy of the stipulation is attached hereto as Appendix "A".

(*Id*. at § 4.02). Likewise, section 4.05 describes the treatment accorded to Class 7 claims.

> 4.05 CLASS 7 - Unless the holder of Class 7 Claim and the Debtor agree to other treatment (see Appendix "A"), the Internal Revenue Service shall be paid 100 percent of its allowed Class 7 claim with interest at the annual rate of 8 percent in seventy-two equal monthly installments commencing on the Plan Effective Date.

(*Id*. at § 4.05). The treatment of Class 11 claims is set forth in section 4.10.

> 4.10 CLASS 11 - Each holder of an allowed Class 11 unsecured claim which is not a Priority Claim shall be paid a total of thirty percent (30%) of such allowed claim in full satisfaction of allowed claim, as follows:
>
> > a. Plan month 48: 4%        d. Plan month: 78: 9%
> > b. Plan month 60: 4%        e. Plan month: 84: 9%
> > c. Plan month 72: 4%

(*Id*. at § 4.10).

Both sections 4.02 and 4.05 reference Appendix "A." Attached as Appendix "A" to the Amended Plan is the Stipulation and Agreement entered into between Johnson and the IRS on April 17, 2007 and approved by the Bankruptcy Court on April 23, 2007. (*Id*. at 10-11). Pursuant to the Stipulation and Agreement, the parties agreed that the IRS' prepetition claim in the total amount of $181,047.76 would be paid in accordance with the following:

> 1. The secured and priority claims totaling $71,968 together with interest thereon at the rate of 8 percent per annum, shall be paid in monthly installments of $1,262 over a seventy-two month period.
>
>> a. The first such installment shall be due on the plan effective date, and each subsequent payment shall be due on the same day of each month thereafter until such time as the amount of such claim plus interest has been fully paid.
>>
>> b. The general unsecured claim of $109,079.88 shall be paid in accordance with the treatment given to other general unsecured creditors under the plan.
>
> ...
>
> 3. To the extent that any federal tax liens attached to any property owned by the Debtor as of the date of the filing of the petition in this case, such property shall remain subject to such federal tax lien until such time as the amount of such liens has been fully satisfied. In order to protect its priority position against postconfirmation creditors, the Internal Revenue Service will file notices of federal tax lien following confirmation of the plan of reorganization for all unsecured priority claims.

(*Id*.).

Section 5.04 of the Amended Plan provided:

> Upon the entry of a final decree, [Johnson] shall be re-vested with its assets, <u>subject only to the outstanding liens which are neither voided or avoided by [Johnson] under the [Bankruptcy Code]</u>.

(Bankr.No. 05-35220-TPA, Docket No. 125 at § 5.04)(emphasis added).

In addition to the Amended Plan and the Stipulation, the Disclosure Statement, originally filed on February 5, 2007, is also relevant. The Disclosure Statement identified that the allowed, secured claims of the IRS at Class 2 would be impaired. (Bankr.No. 05-35220-TPA, Docket No. 88). Section D of the Disclosure Statement provides that "the Internal Revenue Service shall retain the lien which secures its allowed Class 2 Claim and shall be paid 100 percent of its allowed claim with interest at an annual rate of 8 percent in 72 equal monthly installments commencing on the Plan Effective Date." (*Id*. at 3). The Disclosure Statement also recognizes that the IRS had filed a Proof of Claim asserting a secured claim of $178,673.05, but that Johnson disputed the validity of the IRS' lien on his "assets except to the extent of $41,374.88" because Johnson's real property was over encumbered by a mortgage and a county real estate tax lien. (*Id*. at 5, n.1). It is also noted in the Disclosure Statement that Johnson had "<u>commenced a 506 action to 'strip'</u> the Internal Revenue Service's alleged secured claim down to the value of the Debtor's assets after prior and superior liens" and that the estimated secured claim of the IRS would be $41,374.88 after the 506 action was resolved. (*Id*.)(emphasis added). On March 16, 2007, the Disclosure Statement was approved by the Bankruptcy Court (Bankr.No. 05-35220-TPA, Docket No. 103) and on May 3, 2007, the Amended Plan was confirmed by the Bankruptcy Court (Bankr.No. 05-35220-TPA, Docket No. 126). There was no appeal of the Order confirming the Amended Plan.

The adversary proceeding commenced by Johnson against the IRS under § 506 of the Bankruptcy Code, prior to the confirmation of the Amended Plan, contemplated that the Bankruptcy

Court, consistent with the Amended Plan, would determine whether the IRS' prepetition lien would be "stripped" from the real property. The Bankruptcy Court resolved that issue after confirmation of the Amended Plan. The Bankruptcy Court found in favor of Johnson. The IRS' federal tax lien against Johnson's real estate known as 4008 Turnwood Lane, Coraopolis, Pennsylvania, 15108 was "declared null, void and removed." *Johnson*, 386 B.R at 181. The effect of that Order was to strip the IRS' lien from the real property. The IRS timely appealed the ruling of the Bankruptcy Court to this Court.

### III. LEGAL STANDARD

This Court has appellate jurisdiction over final judgments, orders and decrees of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court's findings of fact are reviewed under a clearly erroneous standard and its conclusions of law under a *de novo* standard. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222-23 (3d Cir. 1989); *Manus Corp. v. NRG Energy Inc. (In Re O'Brien Environmental Energy Inc.)*, 188 F.3d 116, 122 (3d Cir. 1999) (rendering that "[a] bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts"); *In re SubMicron Sys. Corp.*, 432 F.3d 448, 454 (3d Cir. 2006). This appeal presents only a legal issue, which will be reviewed *de novo*.

### IV. DISCUSSION

The primary issue set forth in this appeal, as stated by the IRS, is whether "the Bankruptcy Court erred in finding that the federal tax lien applied only to debtor's personal property and should be removed from his real property." (Docket No. 5 at 5). Johnson owned certain real and personal property subject to a federal tax lien. There was no equity in the real property, but there was $41,374.88 in equity in his personal property. The Bankruptcy Court found in favor of Johnson,

7

holding that the federal tax lien encumbered only his personal property and the lien on his personal property would be limited to $41,374.88. The IRS maintains that pursuant to 26 U.S.C. § 2361,[2] the federal tax lien attaches to all of Johnson's property (real and personal) and therefore the lien cannot be "stripped off" of his real property, even though there is no equity available, despite the provisions of § 506 of the Bankruptcy Code relied upon by the Bankruptcy Court. (Docket No. 5). Johnson argues, in accord with the Bankruptcy Court's Order, that §§ 506(a) and 506(d) of the Bankruptcy Code permit a Chapter 11 debtor, such as himself, to avoid the IRS' lien on his real property because he had no equity in the real property available for the IRS' lien and the IRS' lien is wholly unsecured as to the real property. (Docket No. 7).

In its decision, the Bankruptcy Court first discussed whether the practice commonly referred to as "lien stripping" was available in a Chapter 11 reorganization proceeding. As stated by the Bankruptcy Court,

> the phrase "lien stripping" refers to the process of reducing a secured claim to reflect the value of the underlying collateral. Variants of this phrase are a "strip-down" wherein an undersecured creditor's lien is reduced to the equity value held by the Debtor in the collateral (after the amount of any superior lien is deducted from the fair market value of the collateral), and, a "strip-off" wherein a wholly-unsecured creditor's lien is removed from collateral in which there is no equity

---

[2]

26 U.S.C. § 6321 provides that:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.

value.

*Johnson*, 386 B.R. at 173. The Bankruptcy Court described the procedure under §§ 506(a) and (d) of the Bankruptcy Code wherein it found that lien stripping is authorized.

> First, by operation of Section 506(a) an undersecured creditor's allowed claim is bifurcated into secured and unsecured portions. Then, with certain exceptions not applicable here, pursuant to Section 506(d) the lien securing the claim is voided to the extent that it is not an allowed secured claim, effectively stripping the lien "off" to that extent.

*Id*. The Bankruptcy Court identified two issues to be resolved in determining whether Johnson was entitled to the requested relief: (1) whether the decision of the Supreme Court in *Dewsnup v. Timm*, 502 U.S. 410 (1992), precluded such relief in a Chapter 11 proceeding; and, (2) whether the nature of the IRS tax lien would prevent such relief.[3] *Id*. at 174. The Bankruptcy Court answered both questions in the negative, holding that the federal tax lien could be properly stripped off Johnson's real property.

The resolution of this dispute involves the interpretation of § 506 of the Bankruptcy Code, which provides, in pertinent part, that:

> (a)(1) [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the

---

[3] The Bankruptcy Court noted that "the IRS has not even made the argument that *Dewsnup* applies. Nevertheless, the Court does not wish to rest solely on that premise but will independently examine the issue." *Johnson*, 386 B.R. at 174 n. 4. Johnson, however, did argue to the Bankruptcy Court that the Supreme Court's holding in *Dewsnup* was inapplicable to the instant matter. *See Plaintiff's Brief on Whether a Federal Tax Lien Can be Avoided Under Section 506 of the Bankruptcy Code in a Chapter 11 Proceeding*, at 6-8 (Oct. 17, 2007).

> valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
> ...
>
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--
>
>> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>>
>> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506.

In *Dewsnup v. Timm*, the Supreme Court was presented with the issue of whether a debtor in a Chapter 7 proceeding could "strip down" an undersecured creditor's lien on real property to the value of its collateral pursuant to § 506(d) of the Bankruptcy Code. *Dewsnup*, 502 U.S. at 411-12. The petitioner in *Dewsnup*, the debtor, argued that the "interrelationship of the security-reducing provision of § 506(a) and the lien-voiding provision of § 506(d)" permitted such a result. *Id*. at 414-15. Petitioner asserted that as "§ 506(a) bifurcates classes of claims allowed under § 502 into secured claims and unsecured claims; any portion of an allowed claim deemed to be unsecured under § 506(a) is not an 'allowed secured claim' within the lien-voiding scope of § 506(d)." *Id*. Respondents, however, argued that § 506(d) was not "rigidly tied" to 506(a) and that "allowed secured claim" as set forth in § 506(d) was not a term of art but that the words should be read individually to determine their meaning. *Id*. at 415-16.

The Supreme Court found that the language of the Bankruptcy Code was ambiguous and that § 506(d) "voids only liens corresponding to claims that have *not* been allowed" pursuant to § 502.

*Id*. at 415 (emphasis in original). Specifically, the Supreme Court held:

> that § 506(d) does not allow petitioner to 'strip down' respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree ... that the words 'allowed secured claim' must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

*Id*. at 415-417. Four reasons were cited by the Supreme Court in support of this decision: (1) if a creditor's lien was stripped to the judicially determined value under § 506 in a Chapter 7 proceeding, the effect would be to freeze the creditor's interest at that value and any subsequent appreciation in value prior to foreclosure would result in a "windfall" to the debtor; (2) the general rule in pre-Bankruptcy Code practice was that all liens passed through bankruptcy unaffected; (3) "[a]part from reorganization proceedings, ... no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt"; and (4) the petitioner's proposed interpretation would constitute a major change to pre-Code practice which was not supported by legislative history. *Id*. at 417-420.

In *Dewsnup*, the statutory language of "not an allowed secured claim" under § 506(d) was interpreted by the Supreme Court with reference to § 502[4] and not §

---

[4]
§ 502. Allowance of claims or interests

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.
>
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice

11

and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--

> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
>
> (i) the date of the filing of the petition; and
>
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds--

> (A) the compensation provided by such contract, without

506(a). *Dewsnup*, at 415-417. Pursuant to § 502, a claim is deemed allowed unless the debtor objects and the court finds that certain exceptions are met. 11 U.S.C. § 502. The ultimate effect of the holding in *Dewsnup* is that a Chapter 7 debtor is prevented from stripping down an allowed secured claim under § 506(d).

The Bankruptcy Court applied § 506(d) to the instant matter, as Johnson sought relief under that section and the IRS did not object to his use of the same. *Id*. at 175 n. 5. In so holding, the Bankruptcy Court recognized that there is a split of authority regarding the applicability of the

---

acceleration, for one year following the earlier of--

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

11 U.S.C. § 502.

holding in *Dewsnup* and its interpretation of § 506(d) to the reorganization chapters of the Bankruptcy Code. *Johnson*, 386 B.R. at 175 n. 5. Some courts have concluded that lien stripping is supported by § 506(d), limiting *Dewsnup*'s interpretation of that section to Chapter 7 cases, while others have found that lien stripping is authorized by other provisions in the reorganization chapters of the Bankruptcy Code. *Id.* at 175 n. 6 (citing *In re Dever*, 164 B.R. 132 (Bankr.C.D.Cal. 1994); *In re Virello*, 236 B.R. 199, 204 (Bankr.D.S.C. 1999)).

With respect to this split of authority, the leading treatise has criticized the approach taken by Johnson[5] and approved by the Bankruptcy Court in this matter, suggesting that lien stripping in a reorganization proceeding should be effectuated under the specific provisions of the reorganization chapters and not under § 506(d). Specifically, the treatise suggests that:

> [i]n addition to the fact lien stripping under section 506(d) is simply not necessary in the chapter 11, 12 and 13 context, it is also not warranted. First, there is no principled way to conclude that, although section 506(d) does not authorize lien stripping in chapter 7 cases, it has a different meaning in chapter 11, 12 and 13 matters. Pursuant to section 103(a), the provisions of section 506 apply in each of chapters 7, 11, 12 and 13 and no basis exists to alter the meaning of the provision depending on the chapter in which it is applied.
>
> Second, section 506(d) contains none of the safeguards to be found in sections 1129(b), 1225 and 1325 governing the treatment of secured claims and lien rights. The fairness of any particular adjustment to the lien rights of a secured creditor depends on factors that section 506(d) does not begin to probe. In contrast, section

---

[5] In his brief filed before the Bankruptcy Court, Johnson argued that "[t]he text of subsections 506(a) and subsection 506(d), when read together, indicate that one can only have an 'allowed secured claim' to the extent of the value (of the creditor's interest in the estate's interest) in the property subject to the lien and, under subsection (d), the lien is void to the extent it is not supported by value (because it is not an 'allowed secured claim')." *Plaintiff's Brief on Whether a Federal Tax Lien Can Be Avoided Under Section 506 of the Bankruptcy Code in a Chapter 11 Proceeding*, at 8 (October 17, 2007).

> 1129(b), for example, contains a host of requirements that are extremely sensitive to context. In addition, it would make no sense to conclude that, whereas a plan proponent is expressly authorized to adjust the lien rights of a secured creditor under section 1123(b)(5) subject to certain enumerated exceptions, that authority is likewise duplicated in section 506(d) but without the limitations contained in section 1123(b)(5) regarding first priority liens on a debtor's principal residence. <u>The better view is that section 506(d) does not authorize lien stripping. Rather, the ability to adjust the lien rights of secured creditors is provided for elsewhere in the Code.</u>

4 COLLIER BANKRUPTCY MANUAL ¶ 506.06[1][c] (emphasis added); *see In re Blue Pacific Car Wash, Inc.*, 150 B.R. 434, 434 (Bankr.W.D.Wis. 1992)("Because the Court finds that *Dewsnup* definitively resolved the meaning of § 506 for all purposes under the Bankruptcy Code, its holding precludes the stripping down of liens in a Chapter 11 proceeding."). The Court finds this rationale helpful to the analysis of the instant matter, when considered in light of several decisions of the United States Court of Appeals for the Third Circuit.

While the Court of Appeals has not yet directly addressed the issue presented here in the context of a Chapter 11 reorganization, it has considered the issue in the context of a Chapter 13 plan. The leading decision by the Court of Appeals in this regard is *Sapos v. Provident Inst. of Savs. in the Town of Boston*, 967 F.2d 918, 925 (3d Cir. 1992).[6] *Sapos* involved a debtor's reorganization

---

[6]

The Court of Appeals' holding in *Sapos* was later abrogated, in part, by the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), which addressed the antimodification provision in section 1322(b)(2), and is not applicable to the instant matter. *See In re Hammond*, 27 F.3d 52, 56 (3d Cir. 1994)("We conclude the Supreme Court's decision in *Nobelman* did not expressly or implicitly overrule this Court's alternative rationale for its decisions in *Wilson* and *Sapos*. Therefore, we conclude that a mortgage which creates security interests in a debtor's personal property in addition to a lien on the mortgagor's principal residence takes the mortgage beyond the protection of the antimodification clause of section 1322(b)(2) of the Bankruptcy Code and permits bifurcation of the mortgage into secured and unsecured components under section 506(a).").

under Chapter 13 and the Court of Appeals was presented with an issue regarding the interpretation of §§ 506(a), 1322(b)(2) and 1322(b)(5) of the Bankruptcy Code. *Sapos*, 967 F.2d at 918. Our Court of Appeals adopted the reasoning of the United States Court of Appeals for the Second Circuit in *In re Bellamy* that:

> *Dewsnup* did not hold that "secured claim" in other provisions of the Code was never to be construed as it was in § 506(a). Its analysis was limited to § 506(d) and the facts before it. *Id*. at n. 3. Hence, whether "secured claim" has the same meaning as it does in a § 506(a) must be determined with reference to the particular Code provision at issue. In light of the fact that certain Code provisions implicitly state that the term "secured claim" is not to be defined as in § 506(a), *see* Code § 1111(b)(2), it is reasonable to assume "secured claim" ordinarily has the meaning assigned to it in § 506(a), unless to read it in that fashion would be "contrary to basic bankruptcy principles." 112 S.Ct. at 779. *See, e.g., United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir.1989) (as a general rule of statutory construction, if a statute specifies exceptions to its general application other exceptions not mentioned are excluded); *see also* S.Rep. No. 989, 95th Cong., 2d Sess. (68), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5854 (throughout the bill, references to secured claims are only to the claim determined to be secured under § 506(a), and not to the full amount of the creditor's claim).
>
> The differing language of § 506(d) and § 1322(b)(2)-with respect to how the phrase "secured claim" is used-suggests that the <u>*Dewsnup* analysis does not govern construction of § 1322(b)(2)</u>.

*Sapos*, 967 F.2d at 924-925 (quoting *In re Bellamy*, 962 F.2d 176, 182-83 (2d Cir.1992))(emphasis added). The Court of Appeals also cited to what it described as "cautionary language" in the *Dewsnup* decision which limited that holding to its facts, finding that the "*Dewsnup* Court's interpretation of section 506 in a chapter 7 liquidation does not apply in this chapter 13 reorganization" and that the Court of Appeals was therefore "free to address the issues concerning sections 1322(b)(2) and (b)(5) and section 506(a)" set forth in that appeal. *Id.* at 925.

16

In *Sapos*, the United States Court of Appeals for the Third Circuit applied § 1322(b)(2) to permit lien stripping under a Chapter 13 plan of reorganization. *See In re Abruzzo*, Nos. 99-14011DWS, 99-6499, 2000 WL 420635, at *5 (E.D. Pa. Apr. 10, 2000)("The Third Circuit in *Sapos* held, inter alia, that Sapos, a chapter 13 debtor, could strip down the mortgagee's lien and that his plan could 'cram down' the mortgagee's undersecured claim without running afoul of the antimodification provision in the Bankruptcy Code at § 1322(b)(2)."). *Sapos* and later decisions by the Court of Appeals demonstrate that lien stripping in a Chapter 13 reorganization proceeding can be effectuated pursuant to §§ 506(a) and 1322(b)(2) of the Bankruptcy Code. *See e.g., In re Hammond*, 27 F.3d 52 (3d Cir. 1994)(discussing interrelationship of sections 506(a) and 1322(b)(2) in a Chapter 13 proceeding); *In re Johns*, 37 F.3d 1021, 1024 (3d Cir. 1994)(same); *In re McDonald*, 205 F.3d 606 (3d Cir. 2000)(same); *In re Ferandos*, 402 F.3d 147 (3d Cir. 2005)(same). Pursuant to these decisions, lien stripping is executed in the following manner under Chapter 13: a lien is bifurcated into secured and unsecured claims under § 506(a) and then an allowed secured claim can be modified under §1322(b)(2) in conjunction with a debtor's confirmed plan of reorganization, subject to the approval of the Bankruptcy Court.

The Court finds that the analysis of secured claims under *Sapos* in a Chapter 13 reorganization is equally applicable to the instant Chapter 11 reorganization. Chapter 11 contains an analogous provision to § 1322(b)(2) of Chapter 13 - § 1123(b)(5). Section 1123(b)(5)[7] permits

---

[7]

Section 1123(b)(5) provides that:

> Subject to subsection (a) of this section, a plan may--
> ...
> (5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's

a debtor to "modify the rights of holders of secured claims" in conjunction with a Chapter 11 plan of reorganization. 11 U.S.C. § 1123(b)(5). Therefore, to strip a lien in a Chapter 11 proceeding, a court must bifurcate the lien into secured and unsecured claims under § 506(a) and then, if a debtor's plan of reorganization meets the requirements of § 1123(a), a secured claim may be modified pursuant to § 1123(b)(5).

With respect to the § 506(a) valuation in this matter, as recognized by the Bankruptcy Court, the IRS, pursuant to its stipulation with Johnson, had an allowed secured claim of $41,374.88, an allowed unsecured priority claim of $30,595.00, and a general unsecured claim of $109,079.88. The IRS effectively agreed to "strip down" its federal tax lien to the value of Johnson's collateral. *See Johnson*, 386 B.R. at 174, n.4. The parties dispute whether the IRS' allowed secured claim of $41,374.88 should attach to Johnson's personal property only or to both his real and personal property.

Johnson's Amended Plan, which was confirmed by the Bankruptcy Court, demonstrated his intention to strip the IRS' federal tax lien from his real property pursuant to § 506 and his pursuit of a § 506 action against the IRS so that the Bankruptcy Court could determine if lien stripping in this manner was proper. Further, pursuant to the Amended Plan and Stipulation, Johnson is required to pay the IRS one-hundred (100) percent of its secured and priority claims, totaling $71,968, at eight percent interest annually, based on seventy-two (72) monthly payments of $1,262.00. The portion of the IRS' claim that is secured, $41,374.88, is secured by Johnson's personal property and the

---

principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C. § 1123(b)(5).

parties implicitly agreed that this claim would survive the reorganization. The IRS did not challenge the contents of Johnson's Amended Plan under § 1123(a). Therefore, § 1123(b)(5) authorizes Johnson to modify the rights of the IRS' secured claim under his reorganization plan and the Bankruptcy Court to approve the same. Moreover, the Bankruptcy Court held that the modification of the IRS' secured claim by removing the federal tax lien from his real property was necessary for Johnson to achieve a "fresh start" after his reorganization under Chapter 11. *Johnson*, 386 B.R. at 181. Accordingly, the modification of the IRS' federal tax lien was properly authorized under §§ 506(a) and 1123(b)(5) of the Bankruptcy Code.

In light of the above analysis, the argument advanced by the IRS, that the bifurcation of its federal tax lien is not authorized by § 506 or any other provision of the Bankruptcy Code, is misplaced. A debtor in a Chapter 11 proceeding is authorized to "modify the rights of holders of secured claims" pursuant to §§ 506(a) and 1123(b)(5) of the Bankruptcy Code and a confirmed plan of reorganization. 11 U.S.C. § 1123(b)(5). Likewise, the decision relied upon by the IRS, *Hoekstra v. United States (In re Hoekstra)*, 255 B.R. 285 (E.D.Va. 200), which disapproved of a debtor stripping a federal tax lien created under 26 U.S.C. § 6321 from wholly unsecured real property, is clearly distinguishable. *Hoekstra* involved a Chapter 7 liquidation and the Supreme Court's holding in *Dewsnup* applied to prevent the use of § 506(d) to strip down a lien in that situation. *Hoekstra*, 255 B.R. at 392-92. In this case, Johnson's confirmed Amended Plan of Reorganization obviates the concerns articulated by the Supreme Court in *Dewsnup* and the district court in *Hoekstra*. Johnson is not in a position to receive any "windfall" from the sale of his over encumbered real estate as he remains obligated to make payments to the IRS under his confirmed plan.

Upon consideration of Johnson's Amended Plan as a whole and §§ 506 (a) and 1123(b)(5)

of the Bankruptcy Code, the Court finds that the Bankruptcy Court did not err in ordering that the federal tax lien be removed from Johnson's real property under those statutory provisions. In light of that holding, the Court does not need to address the IRS' contention that the Bankruptcy Court erred in applying § 506(d) to bifurcate its federal tax lien.

## V. CONCLUSION

Based on the foregoing, the Court concludes that the Bankruptcy Court was authorized to permit Johnson to "modify the rights" of the IRS in its federal tax lien and sever the lien from Johnson's real property in accordance with §§ 506(a) and 1123(b)(5) of the Bankruptcy Code and Johnson's confirmed Amended Plan of Reorganization. Accordingly, the appeal of the IRS is **DENIED**, and the April 18, 2008 Order of the Bankruptcy Court is **AFFIRMED.** An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: March 31, 2009

cc/ecf: All Counsel of Record

　　　　Honorable Thomas P. Agresti
　　　　United States Bankruptcy Judge